SIO PALELEI, Appellant

v.

STAR-KIST SAMOA, Inc., Appellee

High Court of American Samoa
Appellate Division

AP No. 1-88

November 14, 1988

Before KING*, Acting Associate Justice, KAY**,

---

* Honorable Samuel P. King, Senior Judge, United States District Court for the District of Hawaii, serving by designation of

Acting Associate Justice, TOGAFAU***, Acting Associate Justice, AFUOLA, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Appellant, Charles Ala'ilima
 For Appellee, John Ward

Per Curiam:

This is a dispute over the termination of Sio Palelei from his employment as a fish hauler for Star-Kist Samoa, Inc. Palelei's responsibility was to supply baskets of fish to employees at the fish cleaning tables. As the fish were cleaned, Palelei was to "punch" cards held by each fish cleaner, each punch representing a certain quantity of fish.

On October 9, 1986, Palelei's immediate supervisor issued an Employee Warning Notice to Palelei which now reads:

> This is to warn you for giving free punches for the cleaners without dumping fish. Suspended pending for further investigation. (Over Punches).
> Terminate

Palelei refused to sign the notice. A Payroll-Notification form effective October 21, 1986, noted that Palelei was terminated involuntarily, the action having been approved by the Personnel Manager on October 21, 1986, by the Administrator on October 22, 1986, and by the General Manager on November 3, 1986. The reason given was "Giving free punches for the cleaners without dumping fish . . . ."

---

the Secretary of the Interior.

** Honorable Alan C. Kay, Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

*** Honorable Malaetasi M. Togafau, Judge, District Court of American Samoa, serving by designation of the Secretary of the Interior.

In firing Palelei, Star-Kist did not follow the system of progressive discipline which is set out in the employee handbook distributed to all employees. This system consists of counselling by the employee's supervisor and a verbal warning, written warning with the possibility of a one-day suspension, and finally a "last chance," with the determination to suspend or terminate made in conjunction with the personnel manager. The handbook also lists eighteen different offenses which may lead to termination for a first offense, without the benefit of the successive discipline procedure. This list includes insubordination or willful disobedience to an order, assignment, or instruction, and giving or receiving free punches or wrong punches for fish being cleaned. Palelei was not given an opportunity to contest the accuracy of the basis for the warning.

Palelei sued for wrongful termination on the ground that Star-Kist violated his contractual right to the successive discipline procedure outlined in the manual.

The sequence of events alleged in the verified complaint is as follows:

9/ On October 9th, 1986, there was a problem in the process which created a backlog of fish at the cleaning tables.

10/ Plaintiff was expected by his supervisor to increase his table's production by placing more baskets of fish on the table than could be reasonably handled by the cleaners.

11/ Plaintiff maintained the normal routine to avoid overloading the cleaners.

12/ A complaint was made that day against plaintiff and he was summarily suspended from his employment by his supervisor, Henry Bernard.

Defendant's answer denies these allegations and "specifically denies Plaintiff was summarily suspended from employment." Defendant answers further as follows:

37

13. . . . . Plaintiff was given an immediate written warning when discovered to have been falsifying the fish cleaners' production punch cards . . . which Plaintiff refused to acknowledge by signature. Plaintiff was therefore suspended and subsequently his employment terminated for falsification of records of Defendant.

Defendant moved for summary judgment and filed an affidavit of its Industrial Relations Manager which stated that he was "familiar with the facts surrounding the termination of Plaintiff's employment." He repeats the allegation about "over-punching." He also states that Plaintiff "admitted" to him that Plaintiff "had been wrong in 'over-punching' the cleaners' production cards." Plaintiff relied on his verified complaint. The court received a copy of Defendant's employee handbook, the Employee Warning Notice, and the Payroll-Notification form.

The court issued summary judgment in favor of Star-Kist. The court determined that, while the handbook does create rights on behalf of the employees, Star-Kist was entitled to summarily dismiss Palelei without following the successive discipline procedures.

The trial court found that there was no dispute that Palelei's supervisor had ordered him to increase the speed of production and that Palelei did not comply. The trial court said, in part: Palelei does not contend here, nor does he appear to have argued below, that his failure to comply was not willful or that compliance would have been impossible or unreasonably difficult. Pursuant to the employee handbook, which the trial court held created contractual rights to the review process under certain circumstance, insubordination or willful disobedience allows the employer to terminate the employee without resort to those procedures. The trial court ruled that even if the "wrong punching" charge is factually disputed, Star-Kist was entitled to summary judgment on the basis of the insubordination charge.

The sole issue on this appeal is whether summary judgment was proper on the record before the trial court. We conclude that there are material facts in dispute and therefore reverse.

38

Preliminarily, defendant's motion for summary judgment is defective in not being supported by affidavits based on personal knowledge. The statement by the industrial relations manager that plaintiff had "admitted" wrongdoing is at best ambiguous. The trial court concluded that plaintiff was properly terminated because he was either guilty of insubordination or of falsifying records. But defendant denies in its answer that plaintiff was terminated for insubordination and plaintiff denies "over-punching." Much of the factual material in the trial court's decision was based on statements of counsel at the argument on the summary judgment. Such statements are not a substitute for affidavits based on personal knowledge.

The granting of defendant's Motion for Summary Judgment is reversed and the case is remanded for further proceedings consistent herewith.